**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 13, 2007**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ADAM LUCERO, a/k/a "Gadam,"

    Defendant-Appellant.

No. 06-1414
(D.Ct. No. 05-cr-00374-EWN-10)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

---

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

    Appellant Adam Lucero pled guilty to one count of conspiracy to distribute

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1]  He now appeals his 110-month sentence on grounds the district court erred in determining he was not a minor participant in the drug trafficking activity and failing to hold an evidentiary hearing to determine the quantity of drugs attributable to him.  We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm Mr. Lucero's sentence.[2]

## I.  Factual Background

Based on an investigation concerning several individuals involved in drug trafficking, authorities obtained evidence establishing Mr. Lucero conspired to purchase quantities of cocaine or crack cocaine from both Victor Valdez and Christopher Garduno for resale to customers.  As later stipulated to by Mr. Lucero, one transaction involved one-half ounce of crack cocaine[3] delivered to

---

[1]  The indictment brought forty drug trafficking and related charges against twenty-three defendants; count one implicated Mr. Lucero.

[2]  This appeal is related to another appeal before this court, *United States v. Trujillo*, No. 06-1501, in which Manuel Trujillo was also indicted regarding the same drug trafficking investigation.  However, our dispositions on each case are written separately given the facts and sentencing issues involved are comparatively distinct.

[3]  One ounce is 28.35 grams, resulting in one-quarter ounce being the equivalent of approximately 7.09 grams and one-half ounce the equivalent of approximately 14.18 grams.  *See* United States Sentencing Guidelines

(continued...)

-2-

him from Mr. Valdez on July 6, 2005. Specifically, Mr. Lucero stipulated that during his telephone conversation with Mr. Valdez on July 6, 2005, Mr. Valdez advised he was "cooking" or manufacturing crack cocaine for delivery to Mr. Lucero later that day, and that evening at 9:30 Mr. "Valdez delivered the half-ounce of crack" to him. R., Supp. Vol. 3 (Plea Agreement at 5 (¶ 14)). Mr. Lucero also stipulated Mr. Garduno delivered to him one-quarter ounce of crack on August 4, 2005, one-quarter ounce of crack on August 8, 2005, and one-half ounce of crack on August 15, 2005.[4]

## II. Procedural Background

Following his arrest, the final superseding indictment charged Mr. Lucero with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine and *fifty grams or more of "crack cocaine,"* in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii), and (b)(1)(A)(iii), and § 846. In his plea agreement, Mr. Lucero agreed to plead guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine, a Schedule II controlled

_____

[3](...continued)
("Guidelines" or "U.S.S.G.") § 2D1.1 (Measurement Conversion Table).

[4] As a result, the drug quantity amount stipulated to by Mr. Lucero, and confirmed by authorities during the investigation, totaled at least forty-two and one-half grams of cocaine base, also known as crack cocaine, purchased by Mr. Lucero from Mr. Valdez and Mr. Garduno.

substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846, but stipulated his plea did not include an admission he was involved in obtaining the drug quantities contained in the indictment. Instead, Mr. Lucero noted he was pleading to the lesser included conspiracy offense of *five grams or more of cocaine base* as set forth in 21 U.S.C. § 841(b)(1)(B)(iii). For the purpose of relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B), he stipulated the total drug quantity for which he was accountable was between *thirty-five and fifty grams of cocaine base*, which, under the Guidelines, supports a base offense level of 30. U.S.S.G. § 2D1.1(c)(5) (Drug Quantity Table). He also stipulated he purchased crack cocaine for redistribution to others.

During the change of plea hearing, Mr. Lucero again admitted he purchased crack cocaine for redistribution to others. A discussion ensued concerning the types and quantities of drugs Mr. Lucero purchased. During that discussion, and despite his stipulation otherwise, Mr. Lucero informed the court that with regard to his purchase from Mr. Valdez the government was mislabeling it as crack when it was in fact powder cocaine. Following the district court's questioning on this subject, Mr. Lucero ultimately stated, "I take accountability, Your Honor, for 35 grams or more of crack, between 35 and 50. But I never purchased more than 50 grams, Your Honor." R., Supp. Vol. 2 at 61-62. At the conclusion of the hearing, Mr. Lucero did not withdraw his stipulation he was accountable for thirty-five to

fifty grams of crack cocaine and acknowledged he still wished to plead guilty.

Following the district court's acceptance of Mr. Lucero's guilty plea, a probation officer prepared a presentence report and arrived at a base offense level of 30, based on thirty-five to fifty grams of crack cocaine attributed to Mr. Lucero as a result of his stipulation to that amount. The probation officer recommended a three-level reduction for acceptance of responsibility, but recommended against Mr. Lucero's request for a two-level reduction for being a minor participant, explaining Mr. Lucero operated as an independent distributor of cocaine and the fact this did not make him substantially less culpable than the other participants. With a total offense level of 27 and a criminal history category of VI, the resulting advisory Guidelines range calculation totaled 130 to 162 months imprisonment.

Thereafter, Mr. Lucero filed a motion for a reduction of sentence, requesting a two-level offense reduction based on his claim he was a minor participant in the drug trafficking organization under U.S.S.G. § 3B1.2. In making his argument, Mr. Lucero summarily claimed that "in comparison to the other co-defendants, [he] was a minor participant because he was less culpable and less involved than the other participants," and "his role was far less than others in the case who received lesser sentences." R., Supp. Vol. 3 (Motion at 2

(¶¶ 5-6). In response, the probation officer continued to maintain no mitigating role adjustment was warranted and that Mr. Lucero failed to assert any additional facts which would establish his minor role.

For reasons not fully disclosed in the record, two sentencing hearings were continued with no sentence imposed.[5] At the third and last sentencing hearing, Mr. Lucero's counsel argued the transaction between Mr. Lucero and Mr. Valdez resulted in Mr. Lucero being responsible for only twenty to thirty-five grams of crack cocaine, and not the thirty-five to fifty grams he stipulated to in his plea agreement and at the time of the change of plea hearing, which would reduce his base offense level from 30 to 28 for a lesser sentence. In support, counsel offered into evidence an unsworn, handwritten statement from Mr. Valdez, who, counsel explained, could not appear that day to testify.[6] The district court declined to accept the statement, noting it lacked credibility given it was an unsworn

---

[5] At least one hearing was continued in order to determine if Mr. Lucero was the individual arrested and convicted of the shoplifting charge included in his criminal history report. Even though it was later determined Mr. Lucero was not the person who committed the crime, his criminal history points did not change as it was not assessed when calculating his criminal history category.

[6] Mr. Valdez's handwritten statement, which was provided to the district court at the sentencing hearing and signed by "Victor Valdez," states: "To whom it may concern, To clarify for all parties involved, I, Victor Valdez, on July 6th 2005 delivered a half ounce (14 grams) of cocaine, not cocaine base, to Adam Lucero at a residence in Denver, CO at approximately 9:30 p.m." R., Supp. Vol. 3 (Undated Valdez Statement).

statement from a convicted felon and gang member. In addition, the district court noted the untimeliness of counsel's quantity challenge, pointing out it was not raised at the two prior sentencing hearings. Nevertheless, the district court asked whether counsel wanted to continue the sentencing hearing again in order to present Mr. Valdez for testimony. After conferring with Mr. Lucero, counsel stated, "He prefers to go forward, Your Honor." R., Supp. Vol. 1 at 5. The court then advised, "the offense level will be 30 if he goes forward, period, end of discussion," and then asked, "why wasn't it brought to the Court's attention long ago?" *Id.* After counsel conferred with Mr. Lucero, counsel stated the issue was raised at the change of plea hearing, to which the court responded, "Look, there was no objection to the base offense level in the presentence report, was there? So don't tell me it's not new." *Id.* at 5-6. In response, counsel stated, "Your Honor, we're prepared to proceed forward."[7] *Id.* at 6.

In imposing the sentence, the district court noted the minor participant

---

[7] Later, in his statement to the court and in regard to the disputed Valdez transaction, Mr. Lucero stated:

> I was just trying to state what I feel is a fact, what I know is a fact about that specific transaction. But I appreciate that you give [sic] me the opportunity to speak with you. And the last thing I want to do is mess up a good thing, so I'm ready to accept whatever is handed down to me today.

R., Supp. Vol. 1 at 8.

adjustment applied "if the defendant is less culpable than most other participants."

*Id.* at 9. The district court then stated:

> Here the defendant ... bought quantities of crack cocaine from the co-defendant, Christopher Garduno, for redistribution purposes. He was not under the direction and control of Christopher Garduno. He did it on his own. He operated as an independent distributor.
>
> Based upon this information, it does not appear that the defendant was less culpable than other participants, and the Court will make no role adjustment.[8]

*Id.*

After adopting the factual findings in the presentence report and relying on the advisory Guidelines calculations, the district court noted the Guidelines sentencing range was 130 to 162 months imprisonment. Before imposing the final sentence, the district court stated it had considered the sentencing factors in 18 U.S.C. § 3553, including the nature and circumstances of the offense, the history and characteristics of Mr. Lucero, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public, and provide Mr. Lucero with needed rehabilitation, professional supervision, and educational, vocational or other correctional treatment.

---

[8] In its related sentencing memorandum, the district court reiterated the same reasoning on why the two-point minor participant adjustment under U.S.S.G. § 3B1.2 cmt. n.5 did not apply to Mr. Lucero.

After announcing the factors it considered, the district court granted the government's motion for a downward departure on grounds Mr. Lucero provided substantial assistance, although it indicated it did so without enthusiasm because no evidence demonstrated Mr. Lucero's remorsefulness about his conduct. In sentencing Mr. Lucero, the district court noted that other than the facts contested with respect to the role adjustment, neither the government nor Mr. Lucero challenged any other aspect of the presentence report. Finally, after finding no misrepresentation of Mr. Lucero's criminal history, the district court sentenced him to 110 months incarceration.

## III. Discussion

On appeal, Mr. Lucero continues to contest the district court's finding he was not a minor participant in the drug trafficking organization and alleges the district court erred in refusing to conduct an evidentiary hearing after Mr. Lucero challenged the factual accuracy of the drug amount attributed to him.

### A. Drug Quantity Evidentiary Hearing Claim

Regarding his contention the district court erred in failing to conduct an evidentiary hearing on the contested drug amount, Mr. Lucero claims the district court erroneously determined no dispute arose over the amount of drugs involved in his case even though Mr. Lucero objected to the factual accuracy of the drug

amount used in the presentence report.  In support, he refers to Mr. Valdez's

statement submitted to the district court[9] but attaches to his appellate brief a typed

and notarized affidavit from Mr. Valdez for our review.[10]

"We review the denial of an evidentiary hearing for an abuse of discretion."

*United States v. Smith*, 413 F.3d 1253, 1282 (10th Cir. 2005), *cert. denied*, 126 S.

Ct. 1093 (2006).  In this case, Mr. Lucero is raising a *Booker* issue, contending an

evidentiary hearing was necessary to establish beyond a reasonable doubt the facts

in support of the drug quantity used for sentencing purposes.  However, the

Supreme Court reaffirmed in *United States v. Booker* that where, like here, the

---

[9]  While the undated, unsworn, and handwritten statement is contained in the record on appeal as an attachment to the presentence report, it is unclear when it was provided to the probation officer.  In addition, it is unsworn; was not admitted into evidence or accepted as credible evidence by the district court at the sentencing hearing; and contradicts the evidence obtained by authorities during the investigation and Mr. Lucero's own stipulation on the type of cocaine he purchased from Mr. Valdez.

[10]  We note Mr. Valdez's "new" typed, sworn affidavit is a document never provided to the district court.  Generally, even in a criminal trial, "[t]his court will not consider material outside the record before the district court."  *See United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000).  Moreover, even if we exercised equitable power to supplement the record on appeal, Mr. Valdez's affidavit, when considered together with evidence obtained by the authorities and Mr. Lucero's own stipulation, leaves us with the conclusion the affidavit would not establish beyond any doubt the proper resolution of the pending issue or lead us to believe the interests of justice would best be served by allowing supplementation of the record or remand for an evidentiary hearing.  *Id.* at 1192-93.

defendant makes an admission of the relevant facts, no such finding is required. Specifically, it held "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict *must be admitted by the defendant* or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. 220, 244 (2005) (emphasis added).

In this case, Mr. Lucero's guilty plea was supported by a plea agreement in which he explicitly stipulated: 1) he purchased "crack" cocaine from Mr. Valdez; and 2) he was accountable for a drug quantity of thirty-five to fifty grams of cocaine base for the purpose of calculating his base offense level. At his change of plea hearing, he continued his stipulation, stating, "I take accountability, Your Honor, for 35 grams or more of crack, between 35 and 50. But I never purchased more than 50 grams, Your Honor." R., Supp. Vol. 2 at 62. While he raised some disagreement over the type of drug he purchased from Mr. Valdez, Mr. Lucero did not withdraw his stipulation he purchased cocaine base from him or that he was accountable for thirty-five to fifty grams of crack cocaine.

Following his change of plea hearing, the record discloses Mr. Lucero never filed a formal objection to the drug quantity used in the presentence report. Admittedly, at his sentencing hearing Mr. Lucero contended he should be

-11-

responsible for only twenty to thirty-five grams of cocaine base, as supported by the unsworn, undated and handwritten statement from Mr. Valdez.[11]  However, he did not pursue the issue and instead indicated he preferred to go forward, both after the district court denied admission of the statement and offered to conduct an evidentiary hearing to accommodate Mr. Valdez's testimony, and again, after it advised Mr. Lucero the base offense level would stand at 30 if he went forward. Based on these circumstances, it is clear the district court did not abuse its discretion in failing to conduct an evidentiary hearing on the drug quantity.

## B.  Minor Participant Objection

Regarding his contention he was a minor participant, Mr. Lucero now expounds on that contention, claiming he was less culpable than most other defendants because he:  1) had less drug amounts attributed to him than the other defendants; 2) was not the focus of the undercover investigation; 3) was not a supervisor or manager within the organization; 4) had no knowledge about the scope or structure of the organization; and 5) had no knowledge about other participants at or above his level.  However, Mr. Lucero provides no specific

---

[11] Nothing in the record indicates Mr. Lucero filed a formal objection to the quantity or type of cocaine applied in determining the base level amount.  Our determination is further evidenced by the district court's inquiry on why the quantity issue had not been brought to the court's attention long ago and its observation no previous objection was raised on the base offense level in the presentence report.

information to support these contentions.

Section 3B1.2 of the Guidelines provides a range of adjustments for a defendant who "plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3 B1.2 cmt. n.3(A). More specifically, § 3B1.2(b) allows the trial court to reduce a defendant's offense level by two levels if he or she was a "minor participant in any criminal activity." Commentary to § 3B1.2 also establishes "[a] defendant who is accountable ... only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment ...." *Id.* at cmt. n.3(A).

We review for clear error the district court's refusal to award a defendant a minor role reduction under U.S.S.G. § 3B1.2. *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1130-31 (10th Cir. 2003). Under this standard, "[w]e will not disturb a district court's finding of fact unless it is without factual support in the record, or if after reviewing the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Santistevan*, 39 F.3d 250, 253-54 (10th Cir. 1994) (quotation marks and citations omitted). The district court's decision on whether to apply a minor role adjustment is "heavily dependent upon the facts of the particular case," and "in weighing the totality of

the circumstances, [it] is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." U.S.S.G. § 3B1.2 cmt. n.3(C). The defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to a reduction under § 3B1.2. *See Virgen-Chavarin*, 350 F.3d at 1131. "A defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence." *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004).

In this case, in pleading for a minor role reduction, Mr. Lucero summarily told the district court that "in comparison to the other co-defendants, [he] was a minor participant because he was less culpable and less involved than the other participants," and that "his role was far less than others in this case who have received lesser sentences." R., Supp. Vol. 3 (Motion at 2 (¶¶ 5-6)). On appeal, Mr. Lucero continues to assert self-serving statements, but provides no specific evidence to contradict the district court's determination that no minor role adjustment was warranted given he purchased quantities of crack cocaine for redistribution purposes and was not under the direction and control of the seller, but acted an as an independent distributor for redistribution purposes. Because Mr. Lucero's self-serving assertions are clearly insufficient to meet his burden of establishing entitlement to a minor role reduction, we cannot say the district court

erred in failing to grant a minor role adjustment under U.S.S.G. § 3B1.2. In addition, it is clear from his own stipulation that Mr. Lucero acted as an independent distributor of drugs by buying crack cocaine from Mr. Valdez and Mr. Garduno and reselling it on his own to others. Clearly, such conduct does not lend itself to a "minor role" in assessing the relevant drug trafficking conduct and it was not error to conclude Mr. Lucero was not less culpable than most other participants.

Finally, we have reviewed for reasonableness the length of Mr. Lucero's sentence, as guided by the factors in 18 U.S.C. § 3553(a). *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (*per curiam*).[12] In this case, it is clear Mr. Lucero's sentence was properly calculated and a rebuttable presumption exists as to its reasonableness, which Mr. Lucero has not overcome. *Id.* at 1053-55.

---

[12] We require reasonableness in two respects: "the length of the sentence, as well as the method by which the sentence was calculated." *Kristl*, 437 F.3d at 1055 (emphasis omitted). If the district court, as here, "properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable." *Id.*

IV. Conclusion

For these reasons, we **AFFIRM** Mr. Lucero's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge